IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARNOLD WOODS,

        Plaintiff,

vs.                                                                                      No. CIV 99-1045 LFG/KBM

BDM MANAGEMENT SERVICES
COMPANY, BDM FEDERAL, INC.,
and BDM INTERNATIONAL, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Doc. 20].  In accord with this District's motion package rule, the motion, response, and reply were filed together on November 2, 2000.  The Court, having determined that no oral argument is necessary and that this matter may be decided on the briefs, and being fully advised in the premises, finds that Defendants' motion is well taken and will be granted.

### Procedural History

Plaintiff Arnold Woods ("Woods") brings this action against his former employer, alleging that Defendants' employees misled him with regard to the duties of a position he accepted in Saudi Arabia and that as a result, he has sustained permanent damage to his career.  He asserts four causes of action in his complaint:

(1) Count One: breach of contract by constructive discharge and by failing to employ Woods as a database administrator;

(2) Count Two: breach of the implied covenant of good faith and fair dealing by constructive discharge and by failing to assign Woods to the promised position;

(3) Count Three: promissory estoppel in that Woods reasonably relied, to his detriment, on Defendants' representations that he would be hired as a database administrator;

(4) Count Four: negligent or intentional misrepresentation in that Defendants represented that Woods would be hired as a database administrator, when they knew or should have known that the representations were false, or failed to exercise reasonable care in making the representations.

Woods seeks compensatory damages including medical expenses, travel expenses, and past and future lost wages, benefits and employment opportunities; damages for mental distress; and punitive damages. Defendants bring this motion for summary judgment, arguing that there is no genuine issue of material fact as to any of the four causes of action and that they are entitled to judgment as a matter of law.

## Counts One and Two:
## Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing

A. <u>Breach by Constructive Discharge</u>

Woods appears to premise his claims of breach of contract and covenant on two actions by Defendants: their constructively discharging him, and their failure to allow him to do the database administration work which he had been promised. Although in his response brief, Woods appears to abandon his constructive discharge claim,[1] he does not clearly do so; the Court will therefore

---

[1] He states therein: "Although Plaintiff did plead constructive discharge, Plaintiff does not need to show the traditional elements of constructive discharge to prevail on his breach of contract claim. Plaintiff need only

2

consider whether he has raised a genuine issue on this claim.

In his complaint, Woods clearly states a cause of action for constructive discharge in counts one and two. He alleges in count one (breach of contract) that:

> [a]s a direct result of the aforementioned misrepresentations, Plaintiff was constructively discharged in breach of his employment contract," and that "[a]s a result of Defendants' breach of contract, by constructively terminating Plaintiff without good cause and in violating Defendants' agreement to employ Plaintiff as a database administrator, Plaintiff has been damaged . . .."

Complaint, ¶¶ 19, 20. In count two (breach of the covenant of good faith and fair dealing), Woods alleges that:

> Defendant breached the covenant of good faith and fair dealing with regard to Plaintiff by constructively terminating Plaintiff and by refusing to assign Plaintiff to the position that Plaintiff was promised and which he accepted . . .. The conduct of Defendants in constructively discharging Plaintiff and in failing to place Plaintiff in the position agreed upon by the parties constituted a breach of the covenant of good faith and fair dealings a covenant implied in every contract . . .

Complaint, ¶¶ 23, 25.

Both of these causes of action are premised on Woods' assertion that he was constructively discharged, either in breach of his employment contract or, alternatively, in breach of the covenant of good faith and fair dealing, in that the actual work he was directed to do in Saudi Arabia was different from the work he thought he would be doing when he accepted the position. Woods'

---

show an oral contract to perform certain duties which Plaintiff was not allowed to perform to show breach of contract . . .. [T]his lawsuit does not arise from his termination; it arises from the failure of Defendant to ever allow Plaintiff to perform the duties for which he was hired." Plaintiff's Response Memorandum, at 4, 7. However, as Defendants correctly point out, Plaintiff's claim is for "post-quit" damages, and he therefore suffered no damage until he left his employment, and no compensable damage at all unless he can show that he was constructively discharged.

3

allegations, even if accepted as true, do not support a cause of action for constructive discharge.

> Constructive discharge occurs when a reasonable person in the employee's position would view the working conditions as intolerable. That is to say the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign . . . A plaintiff's subjective views of the situation are irrelevant . . . Essentially, a plaintiff must show that she had 'no other choice but to quit.'

Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997). "The question is not whether working conditions become difficult or unpleasant . . . Rather, a resignation is only considered involuntary if the working conditions are viewed as so intolerable, a reasonable person would feel compelled to resign. Lighton v. Univ. of Utah, 209 F.3d 1213, 1222 (10th Cir. 2000). In other words, Woods is required to submit competent evidence showing that working conditions were so intolerable, he had "no other choice but to quit." Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992). Woods has not met this exacting standard. Although the question whether a resignation is voluntary is to be determined in light of the "totality of the circumstances," Id., and thus would normally be a jury issue, a constructive discharge claim is subject to summary dismissal where the plaintiff cannot show a "genuine" issue as to a "material" fact. Garcia v. City of Albuquerque, __ F.3d __, 2000 WL 1693718 (10th Cir. 2000). Mere argument or contention will not suffice to raise a genuine issue of fact. Woods has the burden of setting forth specific facts supported by admissible evidence, which demonstrate a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). Woods has not raised a genuine factual issue on this question, and the Court finds, as a matter of law, that Woods' working conditions were not so objectively intolerable that a reasonable person would have been compelled to resign.

Defendants provide ample evidentiary support for their argument that Woods' working conditions were not objectively intolerable. Woods' complaint is premised on allegations that he was told that he was being hired as an "Oracle Database Administrator," but that once he arrived in Saudi Arabia at the work site, the tasks he was assigned to do required lesser skills and therefore damaged his future career opportunities in his chosen field.

The advertisement to which Woods responded listed several available positions, among them a position for "Senior Systems Analyst" ("SSA"), and one for "Oracle Database Administrator" ("ODBA") (Ex. B to Declaration of Gregg C. Sindici [Doc. 23]; Woods Deposition at 24, attached as Ex. 1 to the Sindici Declaration and hereafter referred to in the form, "Woods Dep., at 24). On February 25, 1996, Woods sent a letter to BDM Federal, Inc., Saudi Support Office, stating, "I am interested in applying for the Senior Systems Analyst position." (Ex. C to Sindici Declaration). In his deposition, Woods states that he applied for the SSA position and was told that position was not available, but that he would be considered for the ODBA position. (Woods Dep., at 29-30). He felt at the time he applied that the ODBA position that it was the next logical step in his career path, and that he had the background and experience to perform this position. (Woods Dep., at 32-33).

At the time he applied, he understood that the job would require him to design and develop a system for the RSAF, starting from "scratch." (Woods Dep., at 34-35). Indeed, Woods alleges in his complaint that during the application process, he was told by Carlos Velez, a BDM employee, that "this was a new computing group and that Plaintiff would have the opportunity to build systems from the ground up." (Complaint, ¶ 6; Woods Dep., at 80-81). He understood that nothing was in place, and he would be "writing on a clean slate," building systems from the ground up. (Woods Dep., at 81-82).

5

In a March 22, 1996 letter, Defendants extended Woods an offer of a position as "Staff Member in BDMMSC International Division supporting the Royal Saudi Air Force (RSAF) in Riyadh." (Ex. F to Sindici Declaration). The Memorandum of Understanding ("MOU") signed by Woods on March 24, 1996, stated that "[d]uring the period of the MOU, you will receive functional direction from the customer (*i.e,* the RSAF), but you will remain under the administrative guidelines of the Company." (Ex. F to Sindici Declaration, at D0039). Woods understood this statement to mean that he would be getting his work assignments from his Saudi boss, even though administrative functions, such as time off and housing, would be handled by BDM. (Woods Dep., at 50-51). He would be getting his day-to-day tasks and assignments from his "Saudi boss," Colonel Al Ghaithi, and not from any BDM personnel. (Woods Dep., at 51-53).

Woods testified in his deposition that Colonel Al Ghaithi spoke English and was "very friendly, approachable, and tolerant. (Woods Dep., at 71-73). Asked to describe the atmosphere in the office in Saudi Arabia, Woods stated that the employees all got along fairly well, although the Saudis sometimes kept to themselves. The secretary and Colonel Al Ghaithi were friendly and got along with everyone. (Woods Dep., at 71). There was no infighting among office factions. (Woods Dep., at 73).

Woods began working for Defendants in May 1996 and continued in this employment until May 28, 1997, which he characterizes as the date of his constructive termination. (Complaint, ¶¶ 14-15). At some point during this year, he became dissatisfied with the assignments he was receiving from Colonel Al Ghaithi. He stated in his deposition that he would begin a project and, two months into the project, he would be told to stop that project and do something else; this happened two or three times. (Woods Dep., at 105-06). When asked in his deposition why, in his mind, he felt it was

6

necessary to leave the job with BDM and to leave Saudi Arabia, Woods stated:

> A. My career was going down the tubes. I wasn't gaining there. To be an Oracle DBA [database administrator], you need the experience. I didn't get it there. You know, I was stagnating in that respect.
> Q. Okay. Anything else?
> A. Just in general. You know, things weren't getting – you weren't – you know, experience counts in this business. The more you've got, the better your prospects are. Just, you know, the fact that within the office environment, you know, things just – you know, it was pointless to do anything because nothing really benefited anyone. You'd do something for two months. It's throw[n] away because they've – they've changed their mind, and you've got to go and do something else.

(Woods Dep., at 116-17). Woods did not complain to anyone at BDM that the working conditions, as described, were intolerable. (Woods Dep., at 120-22).

Woods asserts in his response brief that he was not allowed to do Oracle DBA work while in Saudi Arabia and that his career was stagnating, because he could not get the experience necessary to become a proficient Oracle DBA, "which would prohibit Plaintiff from getting a decent job when he got back to the States." (Plaintiff's Response, at 2).

Woods cites to pages 116, 118-119, and 142 of his deposition to support this assertion, but he does not attach these pages to his response. Although page 116 of his deposition is attached to the Sindici Declaration, and on this page Woods says that his career is "going down the tubes" and "stagnating" because he was not getting Oracle DBA experience in Saudi Arabia, Plaintiff has not supplied the Court with any support for his assertion that his experience there "would prohibit Plaintiff from getting a decent job when he got back to the States." Woods' deposition is not part of the record of this case, and the Court cannot consider any page citations that are not attached to the parties' briefing, and highlighted as required by the Local Rules. *See*, D.N.M.LR-Civ. 10.6.

7

Furthermore, the Court notes that, as of March 1, 2000, Woods has been employed at Broadbase Software at an annual base salary of $105,000, plus benefits. (Woods Dep., at 11, attached as Ex. 2 to Declaration of Michel J. Duquella [Doc. 28]). This is over twice the salary that he was receiving while employed by Defendants. (*See* Ex. F to Sindici Declaration). Woods points to nothing else in the record to support his assertion that his career was harmed by Defendants' failure to provide him with experience as an Oracle database administrator in Saudi Arabia. Indeed, the inference is to the contrary.

In the spring of 1997, Plaintiff himself decided to leave Saudi Arabia and his position with Defendants, and he began shipping his personal belongings back to the United States by April 10 of that year. (Woods Dep., at 97). There is evidence on the record that Woods had personal reasons, beyond job dissatisfaction, for leaving Saudi Arabia. (Woods Dep., at 57-59, 93, 98, 124). He did not tell his employer of his plans to quit his job. He said he was taking a vacation in Egypt; instead, he left his job and flew home. (Woods Dep., at 98-100). At no time during his employment was he disciplined, threatened with termination, or told that he was a poor performer or was not honoring his contract. (Woods Dep., at 90-91, 109-110). Indeed, he received a merit raise and letter of commendation during the year he was employed in Saudi Arabia. (Woods Dep., at 101, 108, Exs. M, P to Sindici Declaration).

Looking at the "totality of the circumstances" as outlined above, there is simply no genuine issue of material fact as to whether Woods' conditions of employment were objectively intolerable. No reasonable juror could find that they were. At most, he has alleged and shown merely a dissatisfaction with his job assignments and remorse over having taken the position. As was true in Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000), "[t]aking the evidence in the light

most favorable to [the plaintiff], we cannot see how a reasonable trier of fact could find that [plaintiff] was driven from the workplace." *See also*, Sanchez v. Denver Pub. Sch., 164 F.3d 527 (10th Cir. 1998) (affirming summary judgment on a constructive discharge claim); Yearous, at 1357 ("[v]iewing the facts objectively and considering the totality of the circumstances as the law requires, we believe no reasonable jury could conclude that Plaintiffs were constructively discharged").

B. Breach by Failure to Allow Woods to do the Work He Had Been Promised

Woods argues that, even if he weren't constructively discharged, Defendants breached the employment agreement or, alternatively, breached the covenant of good faith and fair dealing, by not allowing him to do the work assignments which he had been promised at the time he was hired.

As noted above, the Court agrees with Defendant that Woods must show a constructive discharge in order to prevail on either of his breach claims, since he would have incurred no damage until he left his job. His mere assertion that his career was somehow crippled by Defendants' failure to allow him to do Oracle database work, assigning him instead to lower-level tasks, does not support compensable damages and, indeed, is not supported by the evidence. He received a job offer when he returned from Saudi Arabia which exceeded the salary he was making while employed by Defendants; he turned down this offer and is now working in a position with a salary more than twice what he made in Saudi Arabia. Woods points to nothing on the record to contradict the strong inference that his career suffered no detriment from his employment experience in Saudi Arabia. To the contrary, the only evidence is that Woods' career was materially advanced following his service in Saudi Arabia.

Furthermore, even if Woods did have a cause of action for breach of contract or covenant based on something short of constructive termination – *i.e.*, Defendants' failure to allow him to do

9

the tasks he wanted and expected to do – he cannot maintain such a cause of action under New Mexico law, because he was an "at-will" employee. Defendants argue that Woods' employment agreement was an "at-will" arrangement, and the Court agrees, as discussed below. When a contract is "at-will," not only can the employer terminate the employee at any time, with or without cause, but the employer also retains " what may be viewed as a lesser-included right to insist upon prospective changes in the terms of that employment as condition of continued employment." Stieber v. Journal Publ'g Co., 120 N.M. 270, 273, 901 P.2d 201, 204 (Ct. App. 1995) (summary judgment in favor of Defendant, affirmed). Thus, even assuming that Woods' job assignments in Saudi Arabia were different from what had been discussed during his job interview and orientation sessions, Defendants did not thereby incur liability under a theory of breach of contract or covenant, since Woods was working "at-will," and Defendants therefore retained the right to alter his job duties as needs changed on-site.

Defendants have submitted evidence, in fulfillment of their burden as the parties moving for summary judgment, that the agreement between Woods and Defendants was for "at-will" employment. Woods has not submitted anything to counter that assertion, and the Court finds there is no genuine issue of material fact on this issue. Defendants' evidence includes the Employment Application which Woods acknowledges he filled out and signed. (Ex. E to Sindici Declaration; Woods Dep.at 37). Woods also acknowledges that he read and understood the following provision of the application, which appears directly above his signature:

> I understand that should I be employed by BDM, my employment is "at will." This means that either party may end the relationship at any time, with or without notice, as prescribed by BDM's policy on termination. There is no promise or guarantee that my employment will continue for any specified period of time.

10

(Woods Dep., at 40).

In spite of this clear language, and Woods' acknowledgment that he read and understood the "at-will" provision, he argues that there is an issue of fact as to whether his employment actually was at-will, pointing to the Memorandum of Understanding ("MOU") between himself and Defendants (included in Ex. F to the Sindici Declaration), which he says make a distinction between terminations "for cause" and "for other than cause."

The MOU states that Woods' assignment to Saudi Arabia "shall have a term of twenty-four (24) months; however, this assignment and MOU may be terminated at any time by the Company upon thirty (30) days prior notice except for termination for cause which shall require no advance notice." (MOU, at D0039). The MOU also provides that, "[i]f the Company deems it necessary to terminate you for other than cause, you will be returned to your home of record," and relocation expenses will be paid by the employer; on the other hand, an employee terminated for cause must pay his own relocation expenses. (MOU, at D0047). Woods does not explain how these provisions alter the fact that he was employed "at-will." The provisions confirm that Woods may be terminated at any time, for no cause at all. Although the MOU requires that the employer give 30 days' notice before terminating Woods for "other than cause," this requirement could not reasonably be seen as negating the explicit at-will provision in the Employment Application, which clearly states, "[t]here is no promise or guarantee that [the] employment will continue for any specified period of time." The 30-day notice provision appears to be a procedural requirement added to the at-will agreement; Woods has not made a persuasive case that the distinction between "cause" and "for other than cause" terminations is a substantive provision which transforms the agreement into one for a specified term.

11

New Mexico law presumes an "at-will" relationship in employment contracts. The general rule is that employment "is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise." Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668, 857 P.2d 776, 779 (1993). Two additional exceptions to the general rule of at-will employment include wrongful discharge in violation of public policy (retaliatory discharge), and an implied contract term which permits termination only for just cause. Id.

Woods has not presented evidence which would support any of these exceptions to the general rule. There is no allegation in this case of retaliatory discharge. The fact that the MOU makes a distinction, in terms of notice and payment of relocation expenses, between terminations for cause and not-for-cause does not constitute "consideration beyond the performance of duties and payment of wages," nor an express contractual provision stating that the contract is not at will, nor an implied contract provision that Woods would be terminated only for cause.

Although the existence of an implied contract term which might modify the at-will agreement is generally seen as an issue of fact, "[l]anguage that is purported to create an implied term must be sufficiently explicit to give rise to an implied contract [or contract term]." Stieber, 120 N.M. at 274; Garrity v. Overland Sheepskin Co. of Taos, 121 N.M. 710, 713-14, 917 P.2d 1382, 1385-86 (1996). Woods has presented nothing to the Court that is explicit, nor even anything that is vague, to show that any promises of continued employment were made.

The Court therefore finds no genuine issue of material fact that Woods' employment was "at-will" and holds, under the authority of Stieber, that his claim for breach of contract, based on Defendants' alleged failure to allow him to do certain work tasks, is subject to summary dismissal.

In addition, the claim for breach of the covenant of good faith and fair dealing must also be dismissed, as the New Mexico Supreme Court "ha[s] declined to recognize a cause of action in an at-will contract for breach of an implied covenant of good faith and fair dealing." Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994).

### Count Three:  Promissory Estoppel

To state a claim for promissory estoppel, a plaintiff must establish the following elements:

> (1) An actual promise must have been made which in fact induced the promisee's action or forbearance;  (2) The promisee's reliance on the promise must have been reasonable;  (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise;  and (5) enforcement of the promise is required to prevent injustice.

Strata Prod. Co. v. Mercury Exploration Co., 121 N.M. 622, 628, 916 P.2d 822, 828 (1996).

Woods alleges in his complaint that "Defendants['] corporate policies, practices, and procedures and defendant's oral representations" that he would be hired as a database administrator (Complaint, ¶27) constituted the requisite promise on which he relied by taking the position with Defendants and traveling to Saudi Arabia.  He asserts further that his reliance was reasonable, and that Defendants failed to keep their promises.  (Complaint, ¶¶ 28-30).

He alleges in his complaint, and argues in his brief, that the position he applied for was "Oracle Database Administrator," and that although Defendants promised he would be performing the duties of database administrator and he reasonably relied on these promises in accepting the position and moving to Saudi Arabia, he was instead "required to do work requiring a lower grade of computer experience and education," all in detriment to his career.  (Complaint, at ¶¶ 27-31;

13

Plaintiff's Response, at 1-3).[2]

At trial, Plaintiff has the burden of establishing each element of the cause of action. If Defendants can show there is no genuine issue of material fact as to any of the elements, then summary judgment may be awarded unless Woods meets his burden of presenting evidence sufficient to raise a triable issue on those elements. Woods has not met this burden, in that he has not raised a genuine issue on the elements of the reasonableness of his reliance, and whether enforcement of the promise is required to prevent injustice.[3]

As noted above, Woods understood that his new job would entail working as part of a new computer group and building systems from the ground up. (Complaint, ¶ 6; Woods Dep., at 34-35, 80-82). He further understood that his day-to-day assignments would come from Colonel Al Ghaithi, the RSAF representative at the work site, rather than from BDM. (Woods Dep., at 50-53; MOU, Ex. F to Sindici Declaration, at D0039). Given that there was no database system in place at the time Woods began his assignment in Saudi Arabia, and indeed, part of his job was to design and implement such a system, no reasonable juror could find that it was "reasonable reliance" on Woods' part to

---

[2]Woods provides greater detail on the promises he alleges were made regarding his position description and job duties, in his "Unsworn Declaration Under Penalty of Perjury" [Doc. 25]. The Court will not consider this unsworn declaration, as summary judgment can only be rendered on the basis of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . .." Fed. R. Civ. P. 56(c); *see also* Rule 56(e). In addition, as Defendants correctly point out, even if this were a proper affidavit, it must be disregarded as it merely contradicts Woods' earlier deposition testimony and appears to be a late attempt to manufacture an issue of fact in an attempt to avoid summary judgment. Bohn v. Park City Group, Inc., 94 F.3d 1457, 1463 (10th Cir. 1996).

[3]Defendants argue that promissory estoppel is not available when a formal contract exists. Woods counters that the promise at issue herein was not part of the formal contract but was made orally, in the course of the application procedure. The Court does not find it necessary to reach the question whether promissory estoppel is applicable under the facts of this case, since Woods has not, in any case, made out a claim for promissory estoppel sufficient to avoid summary judgment.

assume that his sole function would be administering a database system, and that he need not do any of the preliminary, lower-level groundwork necessary to get the system going in the first place. Furthermore, no reasonable juror could find that Woods reasonably relied on representations made by BDM personnel as to the nature of the work on the site, when he admits that it was written into the MOU, and he understood, that it was the RSAF representative, and not anyone from BDM, who would be giving him functional, day-to-day direction at the job site. It would be reasonable to assume that some flexibility would be required.

> Promissory estoppel requires the party invoking the doctrine to have
> acted reasonably in justifiable reliance on the promise that was made
> . . . We hold as a matter of law that it was unreasonable for Chavez
> to change his position in reliance on oral representations contrary to
> an express term of an employment contract . . .

Chavez v. Manville Prods. Corp., 108 N.M. 643, 646, 777 P.2d 371, 374 (1989). *See also*, Master Mortgage Inv. Fund, Inc. v. Chicago Title Ins. Co., 34 F.3d 1076 (Table, text in Westlaw), No. 93-3153, 1994 WL 481228, at *4 (10th Cir. Sept. 6, 1994) ("a reasonable jury could not conclude that MMIF's reliance on Chicago Title's promise was reasonable. Accordingly, we affirm the district court's grant of summary judgment against MMIF on the promissory estoppel issue"). The Court finds there is no genuine factual issue as to whether Woods' reliance was reasonable.

In addition, Woods has not met his burden of showing a triable issue, as he must under this equitable cause of action, as to whether enforcement of Defendants' alleged promise is "required to prevent injustice." Defendants assert that Woods was placed in the position for which he applied, was paid the salary advertised, and was not subjected to intolerable working conditions. They have presented evidence to support these assertions. On this basis, Defendants have made out a prima facie case that there is no genuine issue of material fact as to an "injustice." Woods' entire argument

15

on this issue is the following: "Finally, Defendant argues that the [sic] there is no need to prevent injustice in this case. Based upon the reliance damages shown by Plaintiff, this argument fails." (Plaintiff's Response, at 14). This is insufficient to avoid summary judgment on the promissory estoppel cause of action.

### Count Four: Negligent or Intentional Misrepresentation

Woods asserts in his complaint that Defendants represented to him that he would be hired as a database administrator but that these representations were false, and he reasonably relied on them in accepting the position and moving to Saudi Arabia. He argues, alternatively, that Defendants knew their representations were false at the time they were made (intentional misrepresentation), or that they failed to exercise reasonable care in making them (negligent misrepresentation). He also argues that the issue of whether he reasonably relied on Defendants' misrepresentations is matter to be determined by the jury.

As noted above under the preceding heading, the Court finds no genuine issue of material fact as to whether Woods reasonably relied on alleged statements regarding the nature of his job duties once he reached Saudi Arabia. Woods acknowledges that he was to take direction from his Saudi supervisor, rather than from BDM. (Woods Dep., at 51-53). In addition, as also noted above in the discussion of breach of contract/covenant, Woods could not reasonably rely on any assurances as to the nature of his work, since he was an at-will employee and the employer therefore had the "lesser-included right to insist upon prospective changes in the terms of that employment as a condition of continued employment." Stieber, 120 N.M. at 273.

Woods has not shown that any material misrepresentation occurred, nor does he raise a genuine issue for trial as to whether he reasonably relied on any such misrepresentation. The claims

for intentional or negligent misrepresentation are therefore subject to summary dismissal.

### **Conclusion**

It appears from the record in this case that Mr. Woods may have made an employment decision which he later regretted, and he had an unsatisfactory job experience in Saudi Arabia. The law does not provide a remedy for unsatisfactory job experiences, in the absence of actionable conduct on the part of the employer.

The Court finds that Defendants have met their burden of showing no genuine issue of material fact as to Woods' claims for breach of contract or covenant, promissory estoppel, and negligent or intentional misrepresentation. The motion for summary judgment will therefore be granted.

                                                                                                  _____
                                                                                                   Lorenzo F. Garcia
                                                                                                   United States Magistrate Judge